UNITED STATES *v.* D. J. POWERS (FOR FRANKLIN CO.) AND GEO. WM. RUEFF (INC.) (No. 3038 [1])

[1] T. D. 42811.

United States Court of Customs Appeals, May 25, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein* and *Fred J. Carter*, special attorneys, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.

[Oral argument May 7, 1928, by Mr. Carter and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court in reappraisements Nos. 45644–A and 47375–A.

The merchandise involved consists of vegetable parchment paper. It was entered at the invoice price—the price paid by importers, which, at an early stage of the proceedings, they claimed was the export value. It was appraised by the local appraiser at an amount which he considered represented the foreign value.

Importers appealed to reappraisement.

Upon the trial before the associate justice, sitting in reappraisement, considerable evidence was introduced by the parties. We quote from the testimony of the witness, Buehler, the assistant secretary of the Franklin Paper Co., who testified for importers. He said:

Q. How did you buy this paper, Mr. Buehler?—A. In what way?

Q. Are you the sole agent in this country, I mean?—A. Well, we held the right for this country for one year, during this period.

Q. What are your terms of contract; did you get a special price?—A. No; no special price, any more than any inquiry from this country was turned over to us, if there were any; the foreign mill would deal with nobody else in this country without consulting with us first.

It is evident from this testimony that the Franklin Paper Co. was the sole purchaser of this merchandise in France from Etablissements Dalle Freres & Lecomte, the manufacturers and shippers, *for export* to the United States. There is no evidence that merchandise similar to that imported was sold in the markets of France for export to the United States.

There is considerable evidence upon the question of foreign value. We quote from Exhibit No. 2, an affidavit of Antoine Dalle, president of the board of directors of the concern which manufactured and shipped the merchandise in question:

From May, 1924, until the end of September, 1925, we sold to our French buyers at the basic price of 500 francs per 100 kilos vegetable parchment of the same grade and the same thickness as that stated in the invoices for the Franklin Paper Co. On this price, and during the whole period mentioned, we extended an

immediate discount of 4% on the orders for 5 tons, and, in addition, a special discount, at the end of the year, as per the following indications:

2% discount on a purchase of 20 tons in one year.
2½% discount on a purchase of 40 tons in one year.
3% discount on a purchase of 80 tons in one year.
4% discount on a purchase of 100 tons in one year.
5% discount on a purchase of 120 tons in one year.

In addition to these discounts, the witness stated that a further discount of 1 per centum was allowed for cash payments. There is other evidence in the record, but, for the purpose of this opinion, it need not be stated.

The associate justice held that the entered value was the dutiable value of the merchandise.

The Government filed an application for a review of the judgment of the associate justice.

The appellate division of the Customs Court affirmed the judgment of the associate justice; and, in so doing, said:

* * * we find that the prices paid and invoiced and entered in the two cases represent and were the export values, which were higher than the home-market values. We find that the values found by the single justice in the court below, to wit, the entered values, are and were the export values of the merchandise on the date of exportation as prescribed in the law for export values. We overrule all the assignments of error, and, having found the export value as prescribed in the law to be higher than the home-market value, and that the export values abroad were exactly stated in the entry, and in the decision of the justice below, we therefore affirm the decision of the justice below.

It will be observed that the court below affirmed the judgment of the trial justice upon the theory that the evidence disclosed an export value which was higher than the foreign value of the merchandise.

In view of the uncontradicted testimony of the witness for importers, which we have hereinbefore quoted, that the manufacturer did not sell this merchandise in the markets of France *for export* to the United States to any other than the Franklin Paper Co., its sales for export being limited to this company; and, there being no evidence that similar merchandise was sold for export to the United States, there is no evidence of any export value. This was conceded by counsel for importers in this court at the time the case was argued orally.

The court below made no findings as to foreign value, and, as the jurisdiction of this court is limited to questions of law only, we are unable to do more than reverse the judgment and remand the case for further proceedings. However, in so doing, we think it appropriate at this time to say that, if it were proper to allow the various special rebates on purchases of 20, 40, 80, 100, and 120 tons of the merchandise made during a period of one year, in addition to the regular discount of 4 per centum and the discount of 1 per centum for cash on purchases of 5 tons, in ascertaining foreign value, there would be at least six different "wholesale quantities" and as many foreign values for such merchandise. If such condition prevailed we would

be unable to suggest how an appraiser might proceed to ascertain the foreign value of an importation of this merchandise.

A careful reading of the statutory definition of foreign value is sufficient to show the fallacy of this contention of importers. Section 402, subsection (b) reads as follows:

SEC. 402. (b) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

See *Keve & Young* v. *United States*, 11 Ct. Cust. Appls. 94, T. D. 38747, and cases cited therein; also *United States* v. *Proctor & Co., Hammacher-Schlemmer & Co.*, 15 Ct. Cust. Appls. —, T. D. 42564.

The judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.