OCEANIC TRADING CO. *v.* UNITED STATES (No. 3539)[1]

[1] T. D. 46478.

United States Court of Customs and Patent Appeals, May 22, 1933

*Mark Eisner* (*Oscar Igstaedter* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Thomas J. Canty* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument December 7, 1932, by Mr. Igstaedter and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court in reappraisement 99570–A.

Imported merchandise, consisting of Jacquard-woven table covers and bedspreads, was entered at the port of New York at the invoice prices—claimed by appellant to be the foreign, export, and dutiable values of the merchandise.

The local appraiser appraised the merchandise at its United States values, which were greater than its entered values. The importer appealed to reappraisement.

Evidence was introduced by appellant on the trial before Associate Judge Kincheloe, sitting in reappraisement, tending to establish that appellant purchased the merchandise from the firm of Tessitura di Brembate of Italy, and paid therefor the prices specified in the invoice; that there was no contract, understanding, or arrangement, express or implied, that the Italian firm would sell the involved or identical merchandise, for export to the United States, exclusively to appellant; that the only relationship ever existing between the manufacturer and appellant was that of buyer and seller; and that, although appellant purchased large quantities of the involved articles, approximately 400,000 covers per year—60 per centum of the output of the firm of Tessitura di Brembate—it received no favored or special prices therefor.

In his affidavit, Exhibit 1, one Guilio Bertani, manager of the firm of Tessitura di Brembate, testifying for appellant, said, among other things, that the prices stated in the invoice—

truly represent the market price in the usual wholesale quantities either for home consumption in Italy or for export to the United States at the time of the exportation of the merchandise covered by said invoices. At the time the said merchandise was purchased by the Oceanic Trading Co. and at the time the said merchandise was exported to the United States the said Italian corporation was willing to sell to all purchasers identical merchandise in the usual wholesale quantities at the prices set forth in said invoices to the Oceanic Trading Co. At the said time identical merchandise was offered by the said Italian corporation to all purchasers at the prices set forth in said invoices.

The Government introduced in evidence a special agent's report, collective Exhibit 2. It appears therefrom that the—

principal object of the investigation was to establish definitely whether there is *some similarity* between the Tessiture Brembate's covers shipped to the United States and the covers sold by Tessiture Brembate in the home market; also, between the covers shipped by Tessiture Brembate and those shipped by other Italian manufacturers, such as Magnoni & Tedeschi, Giuseppe Radaelli and Fratelli Rossini. (Italics ours.)

The report is devoted largely to a discussion of that subject, and includes the reasons why the special agent was of opinion that merchandise similar to that here involved was sold for consumption in Italy at prices higher than those paid by appellant.

It further appears from the record that, although Exhibit 2 was before the appraiser, he was unable to accept the conclusion reached by the special agent that the merchandise referred to in his report was similar to that here involved, and appraised the imported merchandise at its United States values.

On this record, the trial court held that the dutiable values of the merchandise were its export values, and that the invoice and entered values represented the export values.

On the Government's application for review of the judgment of the trial court, the Appellate Division of the Customs Court, in an opinion by McClelland, Judge, Brown, Judge, dissenting, held that there was no evidence to sustain the judgment of the trial court, and, accordingly reversed it.

Although the Appellate Division of the Customs Court stated that there was no "affirmative proof" in the record tending to establish either that appellant had the exclusive right to purchase the "seller's merchandise for export to, and sale in, the United States," or that any relationship existed between the Italian firm and appellant, other than that of buyer and seller, the court, nevertheless, said:

\* \* \* but it does appear that the plaintiff purchases about 400,000 pieces of this merchandise a year and that there is no other known importer into the United States of this seller's merchandise. In this connection it is a notable fact that in the shipper's affidavit (Exhibit 1) there are described 30 consular invoices covering shipments by him to the plaintiff throughout the year 1930, and in the months of January and February, 1931, and no mention of even a single shipment to any other American importer. It would seem to be a reasonable assumption that, since the plaintiff contends for export value, which must have for its basis the fact of such or similar merchandise to that in issue being *freely offered for sale packed ready for delivery* to all purchasers at the time of exportation to the United States, if even a single sale of such or similar merchandise had been made to any other American buyer at or about the time of the exportation of this merchandise, the shipper would have included it in his affidavit (Exhibit 1), *supra.*

The court also quoted from, and cited as authority for its holding that appellant had failed to establish export values, the case of *United States* v. *Powers et al.,* 16 Ct. Cust. Appls. 185, T. D. 42811,

wherein this court held that, as there was no evidence that merchandise similar to that there involved was either sold or freely offered for sale to all purchasers in the principal markets of France for export to the United States, and as the sales of the involved and identical merchandise were restricted to the importer, export value had not been established.

Evidently the court intended to hold that, so far as export values were concerned, sales of the involved and identical merchandise were restricted by the foreign shipper, being limited solely to the appellant, and were not sold or freely offered for sale for export to the United States within the purview of section 402 (d) of the Tariff Act of 1930.

In reaching that conclusion, the court evidently considered the direct and positive testimony of the witnesses for appellant that sales for export to the United States were not restricted to appellant, in connection with other facts and circumstances of record from which it appeared that appellant, the only purchaser of such merchandise for export to the United States, purchased "sixty per centum of the output of the firm of Tessitura di Brembate," or approximately 400,000 covers per year.

Counsel for appellant, however, has called our attention to a statement contained in the quoted excerpt from the court's opinion, wherein it was stated that export value had "for its basis the fact that such or similar merchandise to that in issue being *freely offered for sale packed ready for delivery* to all purchasers at the time of exportation to the United States." It should be said in this connection that the statute defining export value, section 402 (d) of the Tariff Act of 1930, does not require that merchandise be "*freely offered for sale packed ready for delivery.*" It requires that the cost of all containers and coverings, "and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States," be added to, when not included in, the market value or price as therein defined.

In view of the fact that the court below quoted from the testimony of appellant's witness Labe, wherein it was stated that, although the involved and identical merchandise was sometimes carried in stock by the Italian manufacturer, in a "majority of cases" the manufacturer did not have such merchandise in stock, but was required to manufacture it so that appellant's orders could be filled, it would seem to be clear that its decision with respect to export values was influenced, if not controlled, by its view that the provisions of section 402 (d), *supra*, defining export value, required that imported merchandise be "*freely offered for sale packed ready for delivery.*" We must hold, therefore, that the court erred in its construction and application of those statutory provisions.

The local appraiser, the trial court, and the Appellate Division of the Customs Court held, and correctly so we think, that the merchandise referred to in the special agent's report, Exhibit 2, differed substantially from, and was not similar to, the involved merchandise.

With regard to foreign values, the Appellate Division of the Customs Court said:

In giving consideration to the very comprehensive statements of the affiant in the foregoing quotation it is not to be overlooked that if justified by actual facts and uncontroverted they would tend to establish that there was a market in Italy for such merchandise at the prices set forth in the invoice before us, *were it not for the fact that the importer disputes that such merchandise is either sold or offered for sale in usual wholesale quantities for home consumption in Italy, and the further fact that the merchandise of the same general character as that here in issue which is sold for home consumption differs materially therefrom.* (Italics ours.)

The meaning intended to be conveyed by the language "if justified by actual facts and uncontroverted," in view of the evidence of record, is not clear to us. The court did not hold that the statements contained in the affidavit were not justified by actual facts. It may be that it had in mind the failure of affiant to disclose actual sales of the involved or identical merchandise for consumption in Italy. If so, it is sufficient to say that neither foreign nor export value, as defined by subdivisions (c) and (d), respectively, of section 402 of the Tariff Act of 1930, is limited to the market value or price at which such or similar merchandise is *sold*, but includes the price at which it is *freely offered for sale*. Accordingly, where it has been established that such or similar merchandise was freely offered for sale, as required by the statute, the absence of evidence of actual sales is not of vital consequence. *United States* v. *Baldwin Universal Co.*, 18 C. C. P. A. (Customs) 394, T. D. 44641, and cases cited therein.

If the court meant to hold, and its decision is open to such construction, that the statements contained in the affidavit were not justified by actual facts, because "the importer disputes that such merchandise is either sold or offered for sale in usual wholesale quantities for home consumption in Italy," it would seem, probably due to some confusion caused by statements of counsel for appellant on the trial of the case, that it was laboring under a misapprehension as to appellant's position.

The record discloses that appellant submitted evidence tending to establish that the invoice prices were truly representative of the market prices in the usual wholesale quantities in Italy, *both for home consumption and for export to the United States;* and that merchandise identical with that here involved was offered for sale at the invoice prices to all purchasers in the principal markets of Italy.

Thereafter, counsel for the Government introduced in evidence the special agent's report, collective Exhibit 2, hereinbefore referred to, for the purpose of establishing that the merchandise had foreign values higher than the invoice and entered values.

Thereupon, counsel for appellant submitted evidence for the purpose of refuting the statements contained in collective Exhibit 2. During the submission of such evidence, the following colloquy occurred:

Mr. IGSTAEDTER. If your honor please, this is not offered to show the price; this is offered to show the kind of stuff sold over there. We are contending that the stuff sold in Italy is not comparable to what we have imported.

Mr. CANTY. I further object on the ground that he is trying to make good his contention of foreign value.

Mr. IGSTAEDTER. There wasn't a word of evidence about the foreign value until the report went in, and now we are trying to rebut it.

Mr. CANTY. Exactly.

Judge KINCHELOE. Of course, the court hasn't seen this report. Does that undertake to establish foreign value?

Mr. IGSTAEDTER. It does.

Mr. CANTY. But we are contending for the United States value.

Mr. IGSTAEDTER. If the Government waives its claim of foreign value, we will quit now.

Mr. CANTY. No, sir; we won't waive it.

We think that the quoted statements of counsel for the parties, standing alone, might properly be construed as a waiver by appellant of any claim that the merchandise had foreign values, and the lower court apparently did so construe it. However, it appears from the petition for rehearing filed by appellant that appellant's counsel had no intention of waiving such claim of foreign values, and reference is made therein to page 19 of a brief stated to have been filed with the lower court, presumably after the submission of the case to the trial judge and before the rendition of the decision and judgment here under consideration, wherein the claim of foreign values was made.

We think the colloquy above quoted should have been considered in connection with the fact that thereafter appellant's counsel continued to make the claim that the merchandise had foreign values, and, when so considered, we think that the conclusion fairly follows that appellant's counsel had no intention of waiving such claim, but that his real purpose was to rebut the claim made by the Government that goods *similar* to those involved were sold or offered for sale in Italy, and that the prices of such goods established foreign values of the imported merchandise, and to insist that goods identical with those imported were offered for sale in Italy, as set forth in the affidavit of Giulio Bertani, Exhibit 1.

Accordingly, we think that the affidavit should have been considered and weighed by the court for the purpose of determining whether

it was sufficient, in view of all the facts and circumstances of record, to establish *foreign values*.

It appears from the consular invoice that, if sold in Italy for home consumption, the involved articles would be subject to a tax of 1½ per centum. It further appears from the invoice, and from the affidavit of Giulio Bertani, considered as sufficient by the trial court, that neither the prices for consumption in Italy nor the export values were higher than the prices set forth in the invoice. Should the Appellate Division of the Customs Court, after weighing the evidence, accept as true the statements contained in the affidavit and those contained in the invoice, the tax would not be an element to be considered in determining foreign values. *United States* v. *Baldwin Universal Co., supra; United States* v. *Allenby & Co. et al.*, 20 C. C. P. A. (Customs) 80, T. D. 45703.

In view of the fact that the jursidiction of this court in reappraisement cases is limited to questions of law only, the judgment must be *reversed*, and the cause *remanded* to the Appellate Division of the Customs Court to give it an opportunity to weigh the evidence in the light of the views herein expressed.

### CONCURRING OPINION

BLAND, Judge, specially concurring: I concur in the conclusion of the majority only because it is my understanding that the reversal of the judgment of the court below and the remand are not intended as ruling that the United States Customs Court, in an appraisement case, is required, under the statute, to give any weight or consideration to an affidavit, such as is discussed in the opinion, and I agree in the reversal because a remand may bring about a fuller and more definite explanation of the attitude of the court below on this important question.