UNITED STATES *v.* LIVINGSTON & SOUTHARD, INC. (No. 3876)[1]

United States Court of Customs and Patent Appeals, December 2, 1935

*Joseph R. Jackson,* Assistant Attorney General (*Ralph Folks* and *John F. Kavanagh,* special attorneys, of counsel), for the United States.

*Mark Eisner* (*Oscar Igstaedter* of counsel) for appellee.

[Oral argument October 11, 1935, by Mr. Folks; submitted on brief by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, in two reappraisement proceedings, Nos. 105434–A and 106295–A, which proceedings were consolidated for the purpose of trial.

The merchandise originally involved in these proceedings consisted of 12 instruments known as rotoscopes, imported from England in 1932 and 1933 by appellee, which is the sole agent in the United

---

[1] T. D. 48060.

States of the seller of the merchandise, the Scientific Apparatus Co. Six rotoscopes were included in each of said shipments.

They were entered for duty at £50 each, less 40 per centum discount, less 3¾ per centum cash discount, plus packing, which the appellee claims is the foreign value. They were appraised at £50 each, less 20 per centum discount, less 3¾ per centum cash discount, plus packing, on the basis of foreign value.

Appellee appealed to reappraisement, and Judge Dallinger, sitting in reappraisement, found that the foreign value of 11 of the rotoscopes was the entered value. As to one of the rotoscopes, designated on the invoice as C732, he affirmed its appraised value. No appeal was taken by the importer with respect to the appraisal of said last-named rotoscope, and its appraisement by Judge Dallinger became final.

Upon an appeal by the Government to the First Division as to the appraisement of said 11 rotoscopes, the judgment of the trial court was affirmed and judgment was entered accordingly. From such judgment this appeal was taken.

Section 402 (c) of the Tariff Act of 1930, under which said appraisements were made, reads as follows:

SEC. 402. (c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It is conceded that the price of the rotoscopes was £50 each, less certain discounts, the amount of which was dependent upon the number of rotoscopes purchased, and the only issue here is as to the amount of discount that should be allowed in determining the foreign value of the involved merchandise.

Upon the trial before the single judge it was stipulated that the merchandise involved in this case is the same in all material respects as the merchandise covered by reappraisement 98498–A, reported in T. D. 45359, 60 Treas. Dec. 1157, and that the record in said case be incorporated in the instant case. In addition to said record, the only evidence introduced on behalf of appellee was an affidavit by one Noel Arthur Mostyn, the relevant portion of which reads as follows:

NOEL ARTHUR MOSTYN, being duly sworn, deposes and says:

(1) I am the secretary of the Scientific Apparatus Company, of Letchworth, England.

(2) I am personally familiar with the sale and exportation of rotoscopes by the said Scientific Apparatus Company to Messrs. Livingston & Southard, Inc., of New York City.

(3) All the rotoscopes covered by consular invoice no. 18230 and certified at London on September 29th, 1932, and shipped on September 30th, 1932, on the steamship *American Farmer*, marked: "L. & S., R. 19, N. Y.", were sold by the said Scientific Apparatus Company to the said Livingston & Southard at s. 130.00 each f. o. b. steamer England.

(4) At the time said rotoscopes were exported from England and long prior thereto there was and now is an agreement whereby the said Livingston & Southard, Inc., are the sole United States distributors of said rotoscopes and whereby it is agreed that no such rotoscopes will be sold for exportation to the United States except to the said Livingston & Southard, Inc.

(5) The said Scientific Apparatus Company has at all times sold identical rotoscopes in the home market in England in retail quantities of one directly to the user at the price of £50, each less 20% less 3¾% discount for cash.

(6) The said Scientific Apparatus Company has at all times and is now offering to sell to all purchasers rotoscopes, identical with those shipped to the said Livingston & Southard, Inc., and covered by the consular invoice above referred to in the usual wholesale quantities of two or more each in the home market in England at a price of £50 each less 30% less 3¾% discount for cash and to all purchasers of six or more at £50 each less 40% less 3¾% discount for cash.

(7) Attached hereto are true copies of invoices representing sales of rotoscopes identical with those shipped to Livingston & Southard, Inc.

Upon behalf of the Government, in addition to the record stipulated as above, three reports of special Treasury agents were introduced.

This being a reappraisement proceeding, the only question before us is whether or not there is any substantial evidence in the record to support the judgment before us on appeal.

It is conceded that there was no export value of the merchandise by reason of the fact that appellee was the exclusive agent of the seller in the United States, and the appellate division so found. It is also conceded that there is substantial evidence that if 6 or more rotoscopes was the usual wholesale quantity of rotoscopes offered for sale in the principal markets of England at the time of the exportation of the involved merchandise to the United States, the judgment of the appellate division should be affirmed.

The case before us, therefore, depends upon the evidence found in the record with respect to what were "usual wholesale quantities" of rotoscopes offered for sale in England at the time aforesaid.

The evidence is uncontradicted that rotoscopes sold for use in England never exceeded one at a time, and there is, we think, substantial evidence that such sales were directly to users of the instruments. Upon such sales a discount of 20 per centum from the basic price was allowed, which the appraiser found, in the case at bar, should be allowed in determining foreign value. There is evidence of one sale of six rotoscopes to Alfred Herbert, Ltd., which were exported to Japan. The Government, however, claims that said purchaser was the exclusive agent of the seller in Japan, and that it was therefore a restricted sale. There is, however, another sale in 1932 of three rotoscopes for export to Japan, to the same party, after the

purchaser's agency for Japan, whatever the nature of such agency was, had ceased.

The record further shows a sale of two rotoscopes on November 13, 1930, to H. J. Stockton & Co., London, apparently for export to Japan. It also shows a sale on July 12, 1930, of two rotoscopes to the U. S. A. Export Co., apparently for export to China.

The record in the incorporated case herein shows a sale of six rotoscopes to appellee in 1931 and, as in the case at bar, it was conceded that this was a restricted sale, appellee being the exclusive agent of the seller in the United States.

It is the Government's contention that, upon the evidence in the record, one rotoscope should be held to be the usual wholesale quantity freely offered for sale in the principal markets of England, especially as the rotoscopes are quite large instruments, expensive and patented.

While it is true that in some cases the sale of a single article may be regarded as a sale in a wholesale quantity, and we have in a number of cases by implication so held, we think that the fact that the affidavit of said Mostyn states that the seller "has at all times sold identical rotoscopes in the home market in England *in retail quantities of one directly to the user*" (italics ours), coupled with the fact that there is uncontradicted evidence that there were sales and offers for sale in wholesale quantities of more than one at a time in the principal markets of England, warranted the holding of the appellate division that sales and offers for sale of one at a time were sales and offers for sale in retail quantities and not in wholesale quantities.

This view is supported by the decision of this court in the case of *Keve & Young* v. *United States*, 11 Ct. Cust. Appls. 94, T. D. 38747. In that case this court said:

Machines are sold wholesale and in quantities of more than a single unit to dealers in Ireland and for export to other countries and that they are so sold definitely establishes not only that a single unit is not per se a wholesale quantity, but that the sales of single units to the ultimate consumer in Great Britain for use and not for resale, are not wholesale transactions. * * *

We therefore hold that there was no error of law of the First Division in holding that offers for sale of one rotoscope at a time in the principal markets of England were not in the "usual wholesale quantities."

The next question for determination is whether there is any substantial evidence in the record that offers for sale of 6 rotoscopes at a time were in the "usual wholesale quantities." We are constrained to hold that there is no such evidence.

In the case of *G. W. Pleissner* v. *United States*, 16 Ct. Cust. Appls. 507, T. D. 43237, this court held that the language "in the usual wholesale quantities" was intended by the Congress to refer to a major portion of the sales or offers for sale in wholesale quantities of

merchandise. In the case of *United States* v. *Minkus*, 21 C. C. P. A. (Customs) 382, T. D. 46912, after citing with approval the case of *Pleissner* v. *United States, supra*, we said:

It is just as evident, however, as was held in the case of *G. W. Pleissner* v. *United States, supra*, that the Congress did intend, by the use of the word "usual," to limit the words "wholesale quantities" to such wholesale quantities as were usually, customarily, and ordinarily freely offered for sale to all purchasers in the principal markets of the country of exportation, in the ordinary course of trade; and that the language "in the usual wholesale quantities" was intended "to refer to a major portion of the sales or offers for sale," in wholesale quantities, of imported merchandise, subject, however, to the further limitation hereinbefore indicated that, although the word "quantities" must be applied in the plural, in the sense hereinbefore stated, the statute does not contemplate two or more "usual wholesale quantities" having two or more market values or prices. On the contrary, the statute does contemplate, we think, but one—*the usual*— having but one "market value" or "price   *   *   *   at which such or similar merchandise is freely offered for sale to all purchasers," at the time of exportation to the United States.

If the courts below were correct in holding, as they did, that the affidavit and the manufacturer's price list, disclosing several wholesale quantities—eight in all, each having a different market value or price—without evidence tending to establish which of the eight was the *usual*, was sufficient to establish a foreign value for the merchandise, there would be eight wholesale quantities, having eight different market values or prices, and as many different foreign values for such merchandise, without regard to the costs of containers, coverings, and other costs, charges, and expenses "incident to placing" it in "condition, packed ready for shipment to the United States." Such a situation is, obviously, not contemplated by the statute.

Accepting the rule declared in said last cited cases, the evidence in the case at bar is uncontradicted that the major portion of unrestricted sales or offers for sale, in wholesale quantities, of rotoscopes like those here involved were in quantities of more than one and less than six.

The evidence shows only two sales of as many as six rotoscopes at one time, exclusive of the restricted sales of the rotoscopes here involved, and one of those sales was a restricted sale to appellee in 1931. On the other hand, as hereinbefore stated, the evidence discloses at least two sales of two each and one sale of three rotoscopes for export to countries other than the United States. This is in harmony with the finding of the First Division of the Customs Court in the instant case. In its opinion we find the following:

That there is a foreign value for this merchandise is not a matter of serious dispute. It is true that actual sales of more than one instrument in the home market have not been established; but sales of more than one instrument have been made to other countries and six to the United States; and, as disclosed by an invoice attached to Exhibit 2 in the case at bar, a sale has been made of three rotoscopes at 50 pounds, less 40 per centum discount, together with three spare jewelled heteroptic shutters valued at 5 pounds, less a discount of 20 per centum. A sale of one instrument is termed a retail quantity in Exhibit 2, being the affida-

vit of Noel Arthur Mostyn, the secretary of the manufacturer, the Scientific Apparatus Co. of Letchworth, England. Attached to the affidavit, Exhibit 2, are copies of invoices showing sales of from one to three of these rotoscopes. For one instrument the discount, with one exception, is 20 per centum, and for three the discount is shown as 40 per centum.

\*       \*       \*       \*       . \*       \*       \*

We therefore have the established fact that sales were made to the United States and Japan of more than one instrument at 50 pounds per instrument, less 40 per centum and 3¾ per centum discounts.

While the court was technically correct in stating that the sale of three rotoscopes was at a price of 50 pounds less a discount of 40 per centum, the fact is, as shown by the record, that this discount was a special concession to the purchaser, and appellee does not claim that in the ordinary course of trade a discount of 40 per centum was offered or allowed for sales of less than six at one time.

However, the court properly considered this sale of three rotoscopes as bearing upon the determination of the usual wholesale quantity of rotoscopes offered for sale.

Inasmuch as the uncontradicted evidence accepted by the court as credible was that there were three sales each involving more than one and less than six rotoscopes, and only two sales of six, even including the restricted sale to appellee in 1931, the First Division, under the cases we have cited, committed an error of law in holding, as it seems to have held, that the offers for sale of six rotoscopes at one time were offers for sale in the usual wholesale quantity.

It is conceded that the discounts from the list price of the rotoscopes freely offered by the seller to all purchasers, whether for home consumption or for export to countries where sales were not restricted to an exclusive agent, were 20 per centum for one, 30 per centum for two or more, and 40 per centum for six or more. It is clear to us that this means the discount of 30 per centum was offered to purchasers of more than one and less than six, and 40 per centum to purchasers of six or more. This being true, in determining the usual wholesale quantity, all sales and offers for sale of from two to five rotoscopes, inclusive, should be considered, and if the major portion of the sales and offers for sale in wholesale quantities were in this group, the 30 per centum discount should be allowed in determining foreign value as such sales and offers for sale were in the usual wholesale quantities. See Stone & Downer Co. v. United States, 21 C. C. P. A. (Customs) 479, T. D. 46958.

As the evidence accepted as credible by the lower court is uncontradicted that the major portion of the sales and offers for sale in wholesale quantities was within the 30 per centum discount group of from two to five, inclusive, it committed error in finding that six rotoscopes constituted the usual wholesale quantity sold or offered for sale.

The foregoing is in entire accord with the affidavit introduced by appellee; that affidavit, made by the secretary of the seller, stated that:

(6) The said Scientific Apparatus Company has at all times and is now offering to sell to all purchasers rotoscopes, identical with those shipped to the said Livingston & Southard, Inc., and covered by the consular invoice above referred to in the usual wholesale quantities of two or more each in the home market in England at a price of £50 each less 30% less 3¾% discount for cash and to all purchasers of six or more at £50 each less 40% less 3¾% discount for cash.

It seems to us that the proper construction of the quoted language is that offers for sale of two or more rotoscopes up to, but not including, six, constituted the usual wholesale quantity; were it to be construed otherwise, the affidavit would not make out a *prima facie* case overcoming the presumption of the correctness of the appraisement by the local appraiser, for it would not have stated what the usual wholesale quantity was, we having held in the case of *United States* v. *Minkus*, *supra*, that under the provisions of section 402 (b) of the Tariff Act of 1922, the predecessor of section 402 (c) of the Tariff Act of 1930, there could be but one usual wholesale quantity in determining the foreign value of merchandise.

As we construe said affidavit, it is entirely in accordance with the evidence in the case that sales and offers for sale of two or more rotoscopes up to, but not including, six, was the usual wholesale quantity of rotoscopes freely offered for sale.

But one question remains for discussion. The special agents' reports and the brief of the Government seem to proceed upon the theory that the foreign value of the rotoscopes in question must be based upon sales or offers for sale in England *for home consumption*. It is our opinion that, under said section 402 (c), all unrestricted offers for sale, such as those in the case at bar, in the principal markets of the country from which the merchandise is exported, whether for home consumption or for export to countries other than the United States, should be considered in arriving at the foreign value of imported merchandise.

While the precise point of whether, in determining foreign value under said section 402 (c) and its predecessors in prior tariff acts, sales and offers for sale of merchandise for export to countries other than the United States should be considered, seems never to have been decided by this court, or by other courts so far as our research has extended, we do not think that Congress intended that the foreign value of merchandise should necessarily be based solely upon sales and offers for sale of such merchandise for home consumption in the country from which the involved merchandise is exported to the United States. There is nothing in said section 402 (c) from which any such limitation may be implied, but on the contrary, when Con-

gress intended such a limitation, as in the Antidumping Act of 1921, it so specifically provided.

In the case of *United States* v. *Iwai & Co. (Ltd.) et al.*, 16 Ct. Cust. Appls. 542, T. D. 43265, this question was raised, but the court stated that it found it unnecessary to pass upon it in its decision.

We therefore hold that, in determining foreign value of the rotoscopes here involved under said section 402 (c), unrestricted sales and offers for sale of such rotoscopes in the principal markets of England for export to countries other than the United States are proper to be considered. This is in accordance with the view of the appellate division in the case at bar.

Finally, it is our view that there is no substantial evidence in the record to support the judgment appealed from, and it must be reversed because the uncontradicted evidence is that the usual wholesale quantity of rotoscopes sold and offered for sale, at the time of the exportation of the involved merchandise from England, was more than one and less than six, upon which a discount of only 30 per centum was offered or allowed in the ordinary course of trade. This being true, there is no basis in the evidence for allowing a discount of more than 30 per centum in fixing the foreign value of the eleven rotoscopes here involved.

In conclusion, we regret that we have not had the benefit of a brief or oral argument by counsel for appellee. Appellee contented itself with filing a reply to the Government's brief to the effect that it would submit the case upon the opinions of the Customs Court in the case at bar and the opinions rendered in the incorporated case.

For the reasons herein stated, the judgment of the United States Customs Court, First Division, is *reversed* and the cause is *remanded* for further proceedings consistent with the views herein expressed.

### DISSENTING OPINION

BLAND, Judge: I cannot concur in the decision of the majority because it leads to such an anomalous result that it seems to me to be obvious that a misapplication of the law has been made.

In the first place, it is not disputed, and should not be, that one machine or one article, if so large and valuable that more than one is rarely sold at a time, may constitute a "usual wholesale" quantity "in the ordinary course of trade" as called for by the statute. To hold otherwise would, in many instances, lead to a determination that there was no foreign or export value for imported merchandise, although enormous quantities were sold without restriction in the country of origin. When the framers of the definitions of the values, found in the statute, used the term "in the usual wholesale quantities", they, no doubt, had uppermost in mind the great bulk of articles

which were sold in quantities of more than one. Our difficulty arises when we attempt to make this definition fit articles like those involved in this appeal.

The majority opinion does not hold that one article is not a wholesale quantity but it does hold, I think, (and this is one of the most grievous errors of the majority) that if one article is sold to a *user*, it is not a wholesale quantity if sales and offers of sale of more than one article at a time in the principal markets of England for export to countries other than to the United States are shown.

This record shows that the overwhelming bulk of the business of the English manufacturer—practically all of it—is directly with the user, sales of one at a time. The nature of the article necessarily brings about this situation. In this case, the parties interested in having more than one rotoscope declared to be the wholesale quantity made diligent search for all evidence of sales of more than one at a time, and according to the majority but three unrestricted sales of more than one could be found, and these were scattered over a period of about two years. The majority then discards all the sales in England of one at a time because these three exceptional sales were made, all for export, and then it proceeds to apply the rule laid down in the in the case of *United States* v. *Minkus*, 21 C. C. P. A. (Customs) 382, T. D. 46912. Having discarded the great bulk of the foreign manufacturer's business, I must concede that the majority opinion is consistent with the majority holding in the *Minkus* case. I did not agree when that case was decided that the arbitrary selection of the majority of sales and/or offers for sale in determining what is the wholesale quantity should in every instance be required. My views in this regard are expressed in the concurring opinion in the *Minkus* case and will not be repeated here.

The decision of the majority now further complicates matters and makes the appraisement of imported merchandise more unsettled and more unsatisfactory by holding in effect that if there are sales or offers for sale for export of more than one article at a time, it is evidence that the sale of one for home consumption is not a wholesale quantity. In this holding, this court's decision in *Keve & Young* v. *United States*, 11 Ct. Cust. Appls. 94, T. D. 38747, is relied upon for supporting authority. That case involved a provision of the tariff act of 1913 which differs in essential respects from the one now under consideration. In that case, the sales of more than one, relied upon, were made to dealers in Ireland, then a part of the United Kingdom of Great Britain and Ireland, the country of manufacture. Also, in the *Keve & Young* case, the question of making a sale "not for resale" was emphasized. We abandoned this emphasized suggestion in the case next below cited. A study of the *Keve & Young* case discloses that the ordinary course of trade in England in the article involved

in that case was so controlled and restricted as to make it undesirable to accept prices of the sales of one at a time as proof of value. No such situation confronts us here.

The majority, in applying the holding in the *Keve & Young* case, and in basing its decision, in part, upon the fact that the rotoscopes sold for home consumption are sold directly to the user, in my judgment, has gone absolutely contrary to what this court has very carefully said, after long-continued wrestling with this problem, in *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216, and elsewhere. In the *Richard & Co.* case is found the following:

It is argued because sales to wholesalers are all made at the same price that therefore this price thus becomes the wholesale price. But it will be observed that the statute does not thus establish the wholesale price. Section 402 (b) does not provide that the wholesale price shall be the price *to wholesalers*, but the price in the usual *wholesale quantities*. The law is not concerned with the persons who buy, but the manner in which they buy. (Italics quoted.)

The majority seems to give great weight, and I think this is particularly unfortunate, to an affidavit of the secretary of the English manufacturing company which contains the following language:

has at all times sold identical rotoscopes in the home market in England *in retail quantities of one directly to the user.* (Italics quoted.)

Does the affidavit of the interested English manufacturer that the sale of one article at a time is the sale of a retail quantity have any binding effect upon this court? We are to determine as a matter of law whether the facts in this record show that the sales of one at a time is a retail quantity and the opinion of an interested witness on this subject should absolutely be ignored. The holding of the majority as to this wholly immaterial statement may bring about undesirable results not now clearly foreseen.

Now, let us see where this decision is likely to lead us. First, it will be looked upon as some authority to the effect that no sale to a *user*, in whatever quantities, can be counted in applying the *Minkus* rule. It may be reasoned that where sales are made by the maker to the user it is a retail transaction and, therefore, involves only a retail quantity.

Second, in this court we must affirm the decision of the lower court in reappraisement appeals, even though manifestly contrary to the weight of the evidence, if there is any substantial evidence in the record to support it. We may be required, by reason of this fact, to affirm an obviously erroneous decision upon the substantial evidence rule, when the evidence consists merely of an affidavit of a foreign manufacturer which states what amounts to a legal conclusion that a certain quantity is a retail quantity or is a wholesale quantity.

Third, all that the foreign manufacturer of big machines, who sells them one at a time at a high price, need do in order to get a low appraised value of the merchandise which he sends into this country, is to show that he has freely offered to sell or did sell at a great discount two machines for export to a country other than the United States. Surely Congress never contemplated that such a value so established should be accepted in the appraisement of imported merchandise.

For the above reasons, I am of the opinion that the original appraisement of this merchandise should stand.