ARKELL SAFETY BAG Co. v. UNITED STATES

No. 4670.—Invoices dated Forshaga, Sweden, August 28, 1930; April 7, December 30, 1932; July 11, 1934; June 18, 1931.
Certified August 29, 1930; April 8, 1932; January 3, 1933; July 12, 1934; June 18, 1931.
Entered at New York September 10, 1930; April 21, 1932; January 18, 1933; July 26, 1934; July 1, 1931.
Entry Nos. 739595/1, 8428.63/1–2–3, 781795, 708139 700364.

(Decided on remand (Reap. Dec. 4560) November 3, 1939)

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

KINCHELOE, Judge: These appeals to reappraisement relate to the question of the proper dutiable value of certain machine-glazed Kraft paper, described on the invoices as "M. G. Kraft paper", imported from Sweden during the years 1930, 1931, 1932, 1933, and 1934. The initial case, reappraisement 115859–A, is the case in which the trial of the issue was had, and at the conclusion of the hearing in said case the record therein was incorporated and made part of the remaining appeals under consideration, to wit: reappraisements 103001–A, 105065–A, 108865–A, and 115858–A.

All of the entries covered by the importations involved in these appeals are so-called duress entries in which the importer entered at a value higher than its claimed value in order to meet advances made by the appraiser in a similar case pending on reappraisement.

The merchandise in question was appraised on the basis of foreign value, and it is claimed by the plaintiff that the market in Sweden for this merchandise is a controlled market; that therefore there is no foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930 for such merchandise; and that the proper basis of appraisement for the instant merchandise is export value as such value is defined in section 402 (d) of said tariff act.

These identical cases were the subject of a previous decision rendered by me and reported as Reap. Dec. 4301, in which I found, on the basis of the record before me, that the market in Sweden for such or similar paper as that covered by the instant importations was a controlled market, all sales for this paper being subject to conditions and restrictions fixed under a cartel agreement between manufacturers and dealers; that there was no foreign value for such or similar merchandise at the times of exportation of the instant merchandise; and that the proper basis for appraisement of said merchandise is export value, and I accordingly sustained the values claimed by plaintiff. (I respectfully invite attention to said decision.)

Defendant appealed the said decision to the Third Division of this court, which division, in an opinion by Judge Evans (Reap. Dec. 4513), sustained the conclusions reached by me insofar as I held that the foreign market was a controlled market, that there was no foreign value for such or similar merchandise; and that the proper basis of appraisement for the instant merchandise is export value. Although the said division concurred with me in the conclusion that the proper basis for appraisement of the machine-glazed Kraft paper in question is export value, they held that, in their judgment, all of the elements

necessary to establish such value under the statute had not been proved by plaintiff. The court said:

As stated above, we find that the single judge was correct in his holding that there is no foreign-market value for this or similar paper as that value is defined in the statute (section 402 (c)). We further find that the decision below was correct insofar as it held that export value, as defined in section 402 (d), is the proper basis of appraisement.

Insofar as the decision below attempts to find what the export value of the imported paper is, it is reversed on the ground that the proof of all the elements necessary for a legal appraisement are not present, in that the record fails to show the usual wholesale quantity for export to the United States. That element being absent, this division is unable to find the values of the paper involved.

The cause is therefore remanded to the single judge with instructions to dismiss the appeals for failure of proof.

That conclusion was reached by the court, notwithstanding the incorporation herein of the record in *United States* v. *Arkell Safety Bag Co.*, 22 C. C. P. A. 258, T. D. 47210 (Suits 3695 and 3696), the pertinency of which will be hereinafter set forth. The cited case concededly involved machine-glazed Kraft paper, similar to that in question, and was an appeal from this court's decision in the case of *Arkell Safety Bag Co.* v. *United States*, reported in Reap. Dec. 2957.

Upon promulgation of the said decision of the Third Division (Reap. Dec. 4513), counsel for plaintiff filed a motion for rehearing in which they stated:

We believe it was reversible error for this Division to hold that proof of "usual wholesale quantity" is a necessary element for a legal appraisement. It is necessary only where the record shows that the price depends upon quantity. It is not necessary where, as is shown here, the same price is freely offered to *all purchasers* for exportation to the United States. The decision of the Division is in conflict with controlling authority on that point.

In the latter connection, it is important to note than when the case covered by Suits 3695 and 3696 was before this same Division, Judge Cline made the following findings based upon the evidence we have quoted above relative to export value. The finding was concurred in by Judge Evans. (See pages 38 and 39 record in Suits 3695 and 3696.) We quote from the opinion:

The affidavit of the sales manager of the foreign manufacturer herein, which was received in evidence as collective exhibit no. 1, is corroborative of the statements in the special agent's report, and, after listing the four shipments now before us, states further that the prices quoted to the Arkell Safety Bag Co. on those shipments were the c. i. f. New York prices at which the export rolls of paper were being freely offered and sold to all purchasers in the United States on the dates of exportation herein.

\* \* \* \* \* \* \*

3. That on the dates of exportation herein the prices at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Sweden, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers or coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, were the values declared upon the entries herein.

The decision of this Division was reversed by the Court of Appeals on the ground that there was error regarding "foreign value." The finding as to "export value" was not disturbed.

Said motion for rehearing was granted and when the case came before the Third Division upon rehearing, counsel for the respective parties agreed that it may be remanded to the single judge for all purposes, whereupon the court issued such order.

I have outlined in detail the history of these appeals to reappraisement with the view of narrowing the issue that is presented for my determination at this time. At the hearing, pursuant to the remand from the Third Division, plaintiff introduced the testimony of two witnesses as well as records of sales and certain statistical data to establish the proper dutiable export value of the instant merchandise. Defendant offered no evidence, either to disturb the previous findings in the case or to contradict the additional proof submitted by plaintiff. Hence, there is nothing in the entire record before me to warrant any change in the conclusions reached by me in my previous decision, Reap. Dec. 4301, so far as the basis of appraisement of the instant merchandise is concerned, and since the division on review of said decision concurred in my findings, except as to the value which truly represents the dutiable export value of the paper in question, I therefore adhere to my previous findings of fact, to wit, that the foreign market for such or similar merchandise as that involved herein, at the times of exportation of the instant merchandise, was a controlled market and therefore there is no foreign value for tariff purposes; and that export value is the proper basis for appraisement of the M. G. Kraft paper in question for duty purposes. The sole question for my determination therefore is: What is that dutiable export value within the statutory requirements of such value as set forth in section 402 (d) of the Tariff Act of 1930?

It appears from the record before me that machine-glazed Kraft paper of the class in question is manufactured in different colors, to wit, brown or the natural color, and various shades of blue, green, and gray, and that it is produced in what are known as "jumbo rolls" and "counter rolls." The so-called "jumbo rolls" are large rolls which are used in the manufacture of linings for barrels, bags, and boxes, and the so-called "counter rolls" are smaller rolls manufactured to a size to fit counter stands in retail stores where they are used for wrapping purposes. It is further disclosed by the record before me that the cost of the "jumbo rolls" or large rolls is 10 cents per hundred pounds less than the so-called "counter rolls" due to the additional cost incident to the production of such so-called "counter rolls", and that the natural or brown-colored paper is $9 and $10 per ton cheaper than the paper manufactured in other colors.

These appeals to reappraisement involve importations of "jumbo rolls" of brown and blue machine-glazed Kraft paper during the years 1930, 1931, 1932, 1933, and 1934.

At the hearing on remand, plaintiff recalled the witness George F. Baine, who had testified at the original hearing. Said witness testified in substance that he is a salesman for the Borregaard Co., agents for the Aktiebolaget Molnbacka-Trysil, exporters of the instant merchandise; that he personally negotiated all sales of M. G. Kraft paper, including those covered by the shipments in question, during the entire period covered by the instant importations for the account of said exporter to American importers; that all of such sales were negotiated without any restriction or condition upon the American purchaser, either as to use or quantity; and that the price for such merchandise was the *same* regardless of the *quantity* purchased.

Supporting the testimony of the witness, there was offered and admitted in evidence as Exhibits 17, 18, 19, 20, 21, 22, and 23, certain schedules, prepared by said witness, setting forth sales of M. G. Kraft paper by the exporter of the instant merchandise during the period covered by the importations under consideration. Each of said exhibits shows the date of the invoice, the name of the American importer, the quantity purchased, the price, the color, and whether the importation was in "jumbo rolls" or "counter rolls". I have very carefully analyzed all of said exhibits and from such analysis I find that the sales set forth therein ranged in quantities from 1,050 pounds to 178,637 pounds; that the prices were in no way affected by the *quantity* sold; and that the prices conform with the invoice prices of the instant merchandise.

Plaintiff also introduced in evidence certain statistical data, represented by Exhibits 26 and 32, which reveal that the majority of sales of M. G. Kraft paper in Sweden for exportation to the United States during the years in which the merchandise in question was exported were made by the said Borregaard Co. Said exhibits present a comparison of the total importations of said paper during said period, as obtained from the Bureau of Foreign and Domestic Commerce of the Department of Commerce, with the sales made by said Borregaard Co., as set forth in Exhibits 17, 18, 19, 20, 21, 22, and 23, hereinabove referred to. Exhibit 26, wherein the result of such comparison is shown in terms of percentage, reads as follows:

| Year | Total Kraft paper importations, Pounds | Borregaard Co. sales, Pounds | Percentage |
|---|---|---|---|
| 1930 | 7, 256, 042 | 5, 843, 098 | 80 |
| 1931 | 3, 978, 530 | 2, 402, 052 | 61 |
| 1932 | 5, 773, 960 | 3, 903, 793 | 68 |
| 1933 | 5, 361, 623 | 4, 047, 906 | 75 |
| 1934 | 4, 365, 335 | 2, 932, 346 | 67 |

The second witness called by plaintiff was the vice president of H. Reeve Angel & Co., a competitor of the said Borregaard Co., and the agent for paper mills in Sweden, Finland, and England, including the Fiskeby Fabriks Aktiebolag of Sweden. The said witness' testimony was particularly directed toward his transactions with the said Swedish mill. From descriptions and notations appearing on certain sales acceptances of his company which were admitted in evidence as Exhibits 27, 28, 29, 30, and 31, together with an examination of the samples in evidence, as represented by Exhibits 12, 13, 14, 15, and 16, the witness testified that the M. G. Kraft paper shipped by the exporter of the instant merchandise is *exactly* the same as such paper handled by his company as agent for the said Swedish mill and imported into the United States by various American importers. Concerning sales of M. G. Kraft paper which he personally negotiated through said Swedish mill with American importers, the witness further testified that the *quantity* purchased in no way affected the *price* paid the mill.

The witness further testified that the sales' acceptances, Exhibits 27 to 31, inclusive, covered transactions that he personally negotiated in the years 1930, 1931, 1932, 1933, and 1934, involving exportations from the said Fiskeby Fabriks Aktiebolag of Sweden to various American importers of paper similar to that under consideration. An examination of each of said exhibits discloses that they relate to sales of M. G. Kraft paper, in quantities ranging from 700 pounds to 15 tons, at prices uniformly lower than those received by the exporter of the instant merchandise; and that they are corroborative of the oral testimony of said witness to the effect that the prices in no way varied according to the quantity involved in the particular transaction.

At the conclusion of the witnesses' testimony, counsel for defendant renewed his motion to dismiss the appeals in question on the ground that plaintiff has failed to make out a *prima facie* case. Said counsel made the same motion at the end of the original hearing of these cases before me, and since there is nothing in the present record to warrant a change in my previous ruling, I therefore adhere to the same and overrule said motion. An exception to said ruling is allowed counsel for defendant.

In my judgment, it is fairly established by the record herein that the machine-glazed Kraft paper covered by the importations involved herein was at the times of exportation of the shipments in question freely offered for sale in the principal markets of Sweden, the country of exportation, for exportation to all purchasers in the United States at the prices set forth on the invoices covered by these appeals to reappraisement.

It will be observed that the above finding does not embrace the conclusion that the said values are representative of prices for such merchandise "in the usual wholesale quantities." It is true that the statutory definition of export value, as set forth in section 402 (d) of the tariff act, includes proof of prices "in the usual wholesale quantities" as one of the elements necessary to establish such value for tariff purposes. Also, it is axiomatic in customs law that usual wholesale quantities of a commodity are the wholesale quantities in which a *majority* of the sales of such commodity are made. *United States* v. *Richard,* 15 Ct. Cust. Appls. 143, T. D. 42216; *Pleissner* v. *United States,* 16 Ct. Cust. Appls. 507, T. D. 43237; *United States* v. *Minkus,* 21 C. C. P. A. 382, T. D. 46912; *Goldmark* v. *United States,* 22 C. C. P. A. 358, T. D. 47378. But where, as in the present instance, it is established of record that merchandise is freely offered for sale to all purchasers in the country of exportation for exportation to the United States at certain definite and fixed prices which prevailed at the time of shipment of the merchandise in question, irrespective of the *quantity* purchased, then, as now, the element of "usual wholesale quantities" does not enter into a proper determination of dutiable export value. Authority for that principle is found in the decision of the United States Court of Customs and Patent Appeals in the matter of *Jenkins Brothers* v. *United States,* 25 C. C. P. A. 90, T. D. 49093, where the court said:

Of course, where the price at which an article is sold does not vary according to quantities sold, no question of usual wholesale quantity can arise, and in such case a single article may sometimes be regarded as a usual wholesale quantity.

In his brief counsel for defendant argues that it was incumbent upon plaintiff to prove sales of similar merchandise by other manufacturers in the country of exportation, and having failed to do so, plaintiff has not met the burden placed on it to establish dutiable export value. In the light of the record before me it is my opinion that such argument is without merit. Plaintiff has introduced evidence, reflected in the form of Exhibit 26 hereinabove referred to, showing that the exporter of the instant merchandise sold from 60 to 80 per centum of all of the M. G. Kraft paper exported to the United States in the years covered by the importations in question. In other words, plaintiff has offered affirmative proof relating to the majority of sales made in Sweden for export to the United States of merchandise identical with that in question over the period with which we are concerned in this case.

It has been held by our appellate court that the terms "such" and "similar" as used in section 402 of the tariff act are not used synonymously, but alternatively. *United States* v. *Irving Massin & Bros.* (16 Ct. Cust. Appls. 19, T. D. 42714). Certainly, the best evidence is that relating to "such" merchandise; that is, identical merchandise.

Resort is to be had to "similar" merchandise only when proof as to "such" or "identical" merchandise is insufficient or totally lacking. Otherwise, as stated by counsel for plaintiff in their brief, the law would be reduced to an absurdity.

The evidence concerning "similar" merchandise which was offered by plaintiff herein refers to a minor number of sales by a competitor in Sweden of the exporter of the paper in question and the price paid for this paper was *lower* than the price paid by the plaintiff for the instant merchandise. However, its chief evidentiary value, in my judgment, lies in the showing that the price of M. G. Kraft paper exported to the United States during the period in question was in no way affected by the quantity purchased.

On the basis of the entire record before me I find the following facts:

(1) That the merchandise in question consists of machine-glazed Kraft paper, described on the invoices as "M. G. Kraft paper," imported from Sweden during the years 1930, 1931, 1932, 1933, and 1934, in so-called "jumbo rolls" in the natural color, brown, and in blue.

(2) That the foreign market during said period for such or similar merchandise was a controlled market subject to conditions and restrictions fixed by a cartel agreement between wholesalers and dealers.

(3) That there was no foreign value for such or similar merchandise at the times of exportation of the instant merchandise.

(4) That the proper basis for appraisement of the instant merchandise is export value.

(5) That the proper export value, as such value is defined in section 402 (d) of the Tariff Act of 1930, and as legally interpreted in the decision of the United States Court of Customs and Patent Appeals in the *Jenkins Brothers* case, *supra,* for the instant merchandise, is the unit c. i. f. invoice value, less nondutiable charges, as follows:

Reappraisement 115859—A, Consular Invoice #1457.—$4.10 per 100 pounds, ess 2% cash discount, inland freight, ocean freight, dock dues and wharfage, and insurance premium, as invoiced.

Reappraisement 115858—A, Consular Invoice #613.—$4.00 per 100 pounds, less 2% cash discount, inland freight, ocean freight, dock dues and wharfage, and insurance premium, as invoiced.

Reappraisement 103001—A, Consular Invoice #317.—$2.60 per 100 pounds, less 2% cash discount, inland freight, ocean freight, dock dues and wharfage, and insurance premium, as invoiced.

Reappraisement 103001—A, Consular Invoice #321.—$3.10 per 100 pounds, less 2% cash discount, inland freight, ocean freight, dock dues and wharfage, and insurance premium, as invoiced.

Reappraisement 103001—A, Consular Invoice #322.—$2.45 per 100 pounds, less 2% cash discount, inland freight, ocean freight, dock dues and wharfage, and insurance premium, as invoiced.

Reappraisement 105065—A, Consular Invoice #2.—$2.00 per 100 pounds, less 2% cash discount, inland freight, ocean freight, dock dues and wharfage, and insurance premium, as invoiced.

Reappraisement 105065—A, Consular Invoice #6.—$2.45 per 100 pounds, less 2% cash discount, inland freight, ocean freight, dock dues and wharfage, and insurance premium, as invoiced.

Reappraisement 108865—A, Consular Invoice #774.—Sw. Cr. 307 per 2,240 pounds, less 2% cash discount, inland freight, ocean freight, dock dues and wharfage, and insurance premium as invoiced.

Reappraisement 108865—A, Consular Invoice #775.—Sw. Cr. 265 per 2,240 pounds, less 2% cash discount, inland freight, ocean freight, dock dues and wharfage, and insurance premium, as invoiced.

I hold as a matter of law that the correct dutiable values of the instant merchandise are the export values as set forth in fact 5. Judgment will be rendered accordingly.