G. W. PLEISSNER *v.* UNITED STATES (No. 3152) [1]

United States Court of Customs Appeals, February 16, 1929

*Brooks & Brooks* (*Frederick W. Brooks, jr.,* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Hugo P. Geisler,* special attorney, of counsel), for the United States.

[Oral argument January 29, 1929, by Mr. Brooks and Mr. Lawrence]

Before Graham, Presiding Judge, and Bland and Hatfield, Associate Judges

Graham, Presiding Judge, delivered the opinion of the court:

The appellant made a number of importations of woolen cloth from Germany, which were duly entered at the port of New York at the invoice unit price of $1.50 per meter. The invoices and the testimony disclose that whenever any particular color of such goods was imported in quantities less than 100 meters in length, additional charges were made by the exporter amounting to 5 per centum on all quantities between 100 meters and 50 meters and 10 per centum on any quantity less than 50 meters. In computing whether a total of 100 meters of any color had been imported, a number of shorter lengths, aggregating 100 meters or more, might be added.

The local appraiser appraised the goods at what he designated as their export value, arriving at this by taking the unit prices, adding thereto the additional charges for short lengths, plus cases and plus inland freight; the importer had added to make dutiable value a turnover tax of three-fourths of 1 per centum, which seems to have been also added. The importer appealed to reappraisement. Justice Brown, sitting in reappraisement, rendered judgment appraising the goods at their foreign value—namely, invoice unit prices—plus cases plus three-fourths of 1 per centum tax. The Government and the importer filed cross errors and the appellate division reviewed the findings of Justice Brown. The result of this review was a reversal of the judgment of appraisement. The decision of the appellate division was, in brief, that there was no export value shown by the record and that the goods should be appraised at their foreign value; that the dutiable value of the goods was their invoice unit price, plus additions for short lengths, plus cases, and plus tax. As to the claim of the importer that 100 meters constitutes the usual wholesale quantity, the opinion of the court states:

The claim is made by the importer that the usual wholesale quantity is 100 meters. The record, however, does not reveal that any additional charge is made by reason of what is termed by the importer "a sale at retail," but an addition is made if pieces are in quantities less than 100 meters, as stated above, so the question of a wholesale quantity does not appear to be material in these cases. These additions are accounted for by reason of the fact that it takes more

labor and expense generally to produce short lengths than long ones. We think the record shows that there is a sale of short lengths in Germany at wholesale where the addition is made.

In the initial case—No. 68277–A—one item on the invoice covers 453.9 meters. It includes both 100-meter lengths and lengths less than 100 meters. The addition for short lengths on this item is $36.30. It is not disputed but that this amount is to be paid by the importer and the sole reason for deducting it is the adopted theory that 100 meters is a usual wholesale quantity and in 100-meter lengths the price is $1.50 per meter.

The importer has appealed from the judgment of the appellate division. On the hearing before this court counsel for both parties concede that there is a foreign value for the imported goods and that such foreign value is the dutiable value. There is, also, no issue made as to the invoice values. As we view the case, the only question arises as to the usual wholesale quantities. If 100 meters is the usual wholesale quantity, the importer's contentions should prevail; if not, the judgment of the appellate division should be affirmed.

In order to dispose of the point suggested, the language of the statute defining "Foreign value" should be considered. That statute is section 402 (b) of the Tariff Act of 1922, and is as follows:

402 (b). The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

This language, it will be observed, specifies that the standard for fixing dutiable value shall be the price of the article, in the *ordinary* course of trade, and in the *usual* wholesale quantities. We had this statute under consideration in *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216. We there observed:

We are unable to see, under the facts hereinbefore stated, where any such evidence appears in the record. The exporters are selling a minor portion of their product at the price claimed by the importer here, namely, list price less 10 per centum and 2½ per centum. How may this properly be claimed to be the *ordinary* course of trade?

\*      \*      \*      \*      \*      \*      \*

It is argued because sales to wholesalers are all made at the same price that therefore this price thus becomes the wholesale price. But it will be observed that the statute does not thus establish the wholesale price. Section 402 (b) does not provide that the wholesale price shall be the price *to wholesalers*, but the price in the usual *wholesale quantities*. The law is not concerned with the persons who buy, but the manner in which they buy.

In addition to the suggestions above quoted, we may observe that a usual wholesale quantity is not alone a quantity which may be sold

at wholesale; it is perfectly possible for such a sale to be made and not be made in a *usual* wholesale quantity. An examination of this statute discloses that the Congress has used the words "ordinary" and "usual." These words, apparently synonymous, are thus defined by Webster's New International Dictionary (1925):

> Ordinary, a. 1. According to established order; methodical; settled; regular. "The *ordinary* forms of law." 2. Common; customary; usual.
> Usual, a. Such as is in common use; such as occurs in ordinary practice, or in the ordinary course of events; customary; ordinary; habitual; common.

It seems quite obvious that the usual wholesale quantities, as used in this statute, should be held to refer to a major portion of the sales or offers for sale of the merchandise in question, and that sporadic sales or sales in minor quantities should not be held to constitute *usual* wholesale quantities. This being true, the record should be examined in order to disclose whether there is any substantial evidence therein to support the finding that less quantities than 100 meters of this cloth are usual wholesale quantities.

George W. Pleissner, the importer, testified:

> Q. (continuing). Now, will you please explain, Mr. Pleissner, what this "Add for short lengths" is and how it comes into the transaction?—A. These are all yard dress goods, and the basis for yard dress goods is 100 meters per color. That is the usual wholesale quantity. If less than the usual wholesale quantity is purchased there is an addition made of 5 per centum for lengths from 100 down to 80 meters, and of 10 per centum below 50 meters. But the base price of $1.50 represents the price at which the goods are sold in the usual wholesale quantity of 100 meters per color.
>
>   *   *   *   *   *   *   *
>
> Q. So it is customary for other manufacturers to quote prices on short lengths, is it?—A. It has never been denied.
> Q. And they have quoted prices on short lengths, adding that difference for the difference in lengths?—A. That has never been denied.
> Q. So that there is a market for short lengths in Germany, is there not?—A. Certainly.
> Q. There is?—A. Certainly.
> Q. Short lengths, then, are sold in the ordinary course of trade in Germany, are they?—A. Yes, but not as a wholesale quantity.

This witness repeatedly reaffirmed this. On one occasion, on cross-examination, he made this statement:

> Q. You are not prepared to state whether there are more short lengths of this merchandise sold in Germany than 100-meter lengths, are you?—A. My impression is that there are, because the manufacturers always take 100 meters.

Whether the witness misunderstood this question or referred to sales at retail or by wholesale does not appear. It is quite apparent, however, from his testimony, both before and after this statement, that he considers and states the usual wholesale quantity to be 100 meters.

Willy Guenther, single procurist for the exporter, deposed as follows:

I further declare that I have sold the fancy woolen dress goods to George W. Pleissner, of New York City, at the base prices stated on my invoices, covering cases Nos. 213, 299, 307, 311, 326, 342, 347, and other shipments made by me during 1926 and 1927, where the usual wholesale quantities of not less than 100 meters per color were purchased, and the additional charge made by me for the short lengths as noted on these invoices has been for the reason that it is customary for the wholesale trade in Germany to order warps of not less than 100 meters of these articles, and that anything less than 100 meters of these articles is considered by us, and by the other manufacturers and wholesalers of similar merchandise in Germany, to be less than the usual wholesale quantity and we, therefore, make an additional charge of 5 per centum for any quantity from 50 meters each to below 100 meters each of a single article, and an additional charge of 10 per centum for any quantities of a single article under 50 meters each.

On behalf of the Government there was offered the report of Assistant Customs Representative Arthur Schroeder, who had investigated the business of exporter in regard to the sales of this class of goods. In brief, this report shows that short-length goods are sold in Germany by these manufacturers, both at retail and wholesale, but what the volume of such sales is, as compared with the gross sales of the product, nowhere appears. The only portion of such report which seems enlightening on this question is the following:

*Evidence of inland sales and deliveries.*—The following sales covering the merchandise in question were copied from the manufacturer's sales records. They show the prices at which these qualities are sold for consumption in Germany, in usual wholesale quantities. All were made at the terms stated above.

Immediately following this statement is an itemization of 10 or more sales to German merchants. However, on examination of these sales, it is found that in no case are they goods of the same dimensions as are here imported. This is shown by an examination of the itemized sales and by the following statement in the report:

*Foreign value.*—The same wool cloth is sold for home consumption. The dimensions of this merchandise are 138 by 140 centimeters when sold for export to the United States. The same cloth when sold for consumption in Germany varies in size. The normal dimensions are 93 by 95 centimeters, 98 by 100 centimeters, and 128 by 130 centimeters.

These sales of the same goods, in different widths, as given in said report, show a range of price, in United States currency, from $0.8044 to $1.50 per meter in length. No attempt is made to show that this cloth woven in narrower widths is of the same value or price in the foreign market as that imported here. The evidence of such sales, therefore, not being connected in any way with the merchandise imported is valueless.

There is no further evidence upon this point in the record. It therefore appears that there is no substantial evidence, and, in fact, no evidence at all, in contradiction of the statements of Pleissner and

512

Guenther, heretofore quoted. It is conceded that sales of these goods in less quantities than 100 meters have been made at wholesale in Germany. There is no evidence, however, that these sales were in the *usual* wholesale quantities, or that anything other than 100 meters of this cloth is a usual wholesale quantity. This being true, the court below erred in reversing the judgment of the appraising justice.

The suggestion is made by counsel for appellant that there may not be more than one usual wholesale quantity, under this statute. In support of this contention *United States* v. *Proctor*, 15 Ct. Cust. Appls. 373, T. D. 42564, and *United States* v. *Powers*, 16 Ct. Cust. Appls. 185, T. D. 42811, are cited.

These cases do not seem to be in point. Both are cases where the price was controlled by discounts which were allowed on the goods imported according to the gross amount purchased in a year. The court there observed that buyers might purchase the same amounts of these goods, in the foreign market, at the same time, and pay different prices therefor, and properly remarked that there might not be several foreign values for the same goods, arrived at by this method. We have no such condition here, but rather a case where every purchaser of the same amount pays the same price. No part of our conclusion here rests upon these cases. Nor should we be understood as holding that there may not be more than one wholesale quantity to establish foreign value. We do not find it necessary to pass upon that question. What we say here is said solely and alone upon the record as it is submitted to us.

For the reasons suggested, the judgment of the Appellate Division of the Customs Court is *reversed* and the cause *remanded* for further proceedings in conformity herewith.