AMERICAN SHIPPING CO. *v.* UNITED STATES

No. 4928.—Invoice dated Stockholm, Sweden, December 6, 1937.
Certified December 7, 1937.
Entered at Chicago, Ill., January 3, 1938.
Entry No. 7293.

(Decided June 12, 1940)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Samuel D. Spector* and *Richard E. Welsh*, special attorneys), for the defendant.

EVANS, Judge: This is an appeal to reappraisement from the finding of value made by the United States appraiser upon an importation of X-ray grids from Sweden entered at the port of Chicago. The importer entered four sizes and there was found in the shipment, not invoiced, one additional grid. All of the merchandise was appraised on the basis of the foreign value as defined by section 402 (c) of the Tariff Act of 1930. The importer claims that the first, third, and fourth items listed on the invoice, to wit, sizes 8″ x 10″ (25.5 x 30.5 cm.), 12⅝″ x 13⅜″ (32 x 34 cm.), and 14″ x 17″ (35.5 x 43 cm.), respectively, should have been appraised on the basis of the foreign value but at a lower valuation than that adopted by the appraiser, but that there exists no foreign nor export value for the second item, 10″ x 12″ (25.5 x 30.5 cm.), since there were no free offerings for sale to all purchasers for export, the General Electric X-Ray Corporation, the importer herein, being the sole sales agent in the United States. He further claims that there is no United States value for the same and hence the basis of valuation should be the cost of production as to that item.

The testimony establishes that these grids are manufactured by Georg Schönander of Stockholm, Sweden; that the type of grid in-

volved is known as the Lysholm Ex-Ray grid and that the manufacturer is the only person in Sweden who manufactures this grid and that no one produces a like or similar grid. He further established that he had been in charge of his business for 18 years and that he is familiar with the trade conditions of said merchandise in Stockholm. While in this country the manufacturer made a contract with the importer herein, to wit, the General Electric X-Ray Corporation of Chicago, whereby that corporation was constituted the sole and exclusive agent in the United States for the distribution of the type of merchandise manufactured by the exporter. The contract in question was introduced in evidence and marked Exhibit A and it shows that the parties fixed the sales prices in the United States as a basis from which to find discounts.

A representative of the importing corporation testified that they sold to two types of purchasers, viz, users and distributors, and that the distributors were protected by an established price less than the price made to users. The evidence shows that there was no export value for the reason above stated.

The plaintiff introduced an affidavit of the manufacturer, and the defendant a special agent's report. A sample of the merchandise involved was received in evidence and marked Exhibit 2. There were also introduced the manufacturer's price list, an unsigned copy of the agreement—the latter introduced apparently for the purpose of showing the sales price of the size 10″ x 12″ not on the original agreement, although the memorandum contains other pencil notations not explained—and a catalog price list of X-ray grids sold by another X-ray supply distributor. The last named was received because it carries the United States sales price of Lysholm X-Ray grids.

The special agent's report states that the agent visited the plant of the exporter and inspected the records and books of account and other information from other sources. It is not possible to reconcile the information given by the affidavit of the exporter with the data in the special agent's report because the report does not give information about identical sizes nor dates of sales of grids reported to have been sold in Sweden. Exhibit 1, the affidavit of the manufacturer, states:

I have exclusive agreements with the dealers in the different countries throughout the world (except Sweden, Finland, and Denmark) under which I agree to sell my grids only to one agent or dealer in each country. As a result, all of my sales of X-ray grids to such countries, are made by or thru one dealer, although I exercise no direct control over the price at which such a dealer sells my grids in the country in which he acts as my sales agent.

He further states:

My agents in Sweden, Finland and Denmark do not have exclusive sales agencies; my sales in such countries being made to competitive agents in the ordinary course of trade,

The exporter gives a complete list of all sales made to Sweden, Denmark, and Finland and states:

The above-mentioned sales constitute the total sales by Georg Schönander to buyers in Sweden, Denmark and Finland of the four types of X-ray grids from September 1, 1937, through July 31, 1938.

So far as the evidence is concerned there are but two sources of information available to the court for the purpose of establishing valuation. One is the affidavit introduced by plaintiff as Exhibit 1, the other the special agent's report introduced by defendant as Exhibit 7. Neither of these is entirely satisfactory. The special agent procured his information from the exporter and yet it does not coincide with facts, figures, and dates as sworn to by said exporter. The discrepancies are not large but they do exist. The list of prices upon which apparently the appraiser acted is found on page 4 of the special agent's report under this statement:

The following *were said to be* the effective inland prices for hospitals and supply houses: [Italics not quoted.]

The sizes given are in cm. and they do not correspond to the cm. sizes as quoted in Exhibit 1. The statement does not assume to say that those prices were taken from the books of the manufacturer and exporter. On the other hand, Exhibit 1, the affidavit, is made by an interested party, a foreigner, although the affidavit is made in the English language with no showing that the affiant understood or could read or write the English language. Nevertheless, since the record shows that the affiant had visited this country, and made an agreement in this country in the English language, the court will indulge the presumption that he did understand the facts to which he made affidavit, and therefore prefers to accept the facts as outlined with the great amount of detail therein contained as against the unsupported, unsworn hearsay statements of the special agent's report which carries no supporting data in the way of copies of invoices, etc.

In view of the record we will consider each size grid separately.

As to the 14″ x 17″ (35.5 x 43 cm.) size, there is one objection that might be raised to the use of the data furnished as to value on page 5 of Exhibit 1, the manufacturer's affidavit. We find there the following statement:

From September 1937 through July, 1938, I made no sales of the type 35.5 x 43 cm. to ultimate users, but I made one sale of this type to a dealer as follows:

| Date of Sale | Purchaser | Quantity | Unit Price |
|---|---|---|---|
| Jul. 25, 1938 | A. B. Elema, Stockholm, Sweden_____ | 1 | 180.— |

Ordinarily such a sale would be too remote to furnish the basis for appraisement, the instant merchandise having been exported during December, 1937. However, the special agent's report is dated April

14, 1938, and he states in the list of prices said to be effective, this item as 35 x 43 cm. to supply houses at 180 Skr. It would therefore seem safe to presume that the price of such item was not fluctuating at about the time of this exportation.

Concerning item 10″ x 12″ (25.5 x 30.5 cm.) the affidavit states:

> Apart from the General Electric X-Ray Corporation in the United States, I have sold the 25.5 x 30.5 cm grids only to exclusive dealers in Great Britain, Australia and South Africa. The nearest thing to the type 25.5 x 30.5 cm grids which I make, is the type 26 x 32 cm grids; however these two grids are not the same thing and they are not commercially interchangeable.

Since the sale of the identical size to other foreign countries was made to exclusive agents we cannot use that as the basis for foreign value, and since the proof shows no sale of prototype merchandise in the United States, we cannot resort to United States value. (*United States* v. *Sheldon*, 23 C. C. P. A. (Customs) 245, T. D. 48108, and *Stern Hat Co.* v. *United States*, 26 C. C. P. A. (Customs) 410, C. A. D. 48.) There is no export value for any of these items, as stated above. I therefore find that this item should have been appraised at the cost of production, which, as shown by Exhibit 1, is 135 Skr.

As to item 12⅝″ x 13⅝″ (32 x 34 cm.) I find the proper value to be the foreign value, 150 Skr.

I further find that as to item 8″ x 10″ (20.5 x 25.5 cm.) the major number of sales as shown by the evidence were made at 100 Skr. which represents the foreign value. Following the rule laid down by this court and the Court of Customs and Patent Appeals that price should govern. See *United States* v. *Schwartz Jewelry Co.*, Reap. Dec. 4606, 2 Cust. Ct. 1032; *G. W. Pleissner* v. *United States*, 16 Ct. Cust. Appls. 507, T. D. 43237; *United States* v. *Minkus*, 21 C. C. P. A. (Customs) 382, T. D. 46912; *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093.

I further find that one grid constitutes the usual wholesale quantity. Judgment will be rendered accordingly. It is so ordered.