RAMALLAH TRADING CO. *v.* UNITED STATES

**No. 7799.—**
Entry Nos. 22975/1; 22975/2; 22975/3.

(Decided February 21, 1950)

*Lane & Wallace* (*William H. Fox* of counsel); *Brooks & Brooks*, associate counsel; for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

RAO, Judge: In the three cases above enumerated, the importer appeals for reappraisement of certain cotton and rayon bedspreads, table covers, and scarves, imported from Italy. The merchandise in question was entered at certain unit values, less a 1 per centum cash discount, less a 7 per centum trade discount, less freight. The cost of packing was included in the unit values as entered. It was appraised at the unit values, less a cash discount of 1 per centum, packing and freight included.

At the trial, it was stipulated that the merchandise was appraised on the basis of export value, and that such value was the proper basis for appraisement; that freight was a nondutiable item; that the unit values were correct; and that the 1 per centum cash discount was a deductible item.

There remains for consideration the question of whether the 7 per centum trade discount is or is not deductible in determining the value of the imported merchandise. The importer contends that said item is not a part of the export value of the instant articles for the reason that a total discount of 7 per centum was freely allowed on every sale made by the manufacturers of such merchandise, in the usual wholesale quantity, for export to the United States. The Government urges the contrary, claiming that the appraised values are the

correct values of the importations; that the discount in question was not allowed to *all* purchasers who bought in the usual wholesale quantities, but to those only who fulfilled a condition precedent, to wit, the purchase of a specified quantity in dollar value during the preceding 2 years; and that the importer has failed to establish the usual wholesale quantities in which such or similar merchandise was freely offered for sale to all purchasers in the country of exportation.

The evidence in the instant case is not conflicting. It consists of the oral testimony of seven witnesses for the importer, an affidavit of the general manager of the firm which manufactured and sold to the plaintiff certain of the imported merchandise, an affidavit of the general manager of the trade organization known as Ufficio Controllo Esportazione Copriletti (bedspread control office), hereinafter referred to as UCEC, of which all of the manufacturers in Italy of cotton and rayon bedspreads and other similar articles or fabrics were members, and a report of the acting supervising treasury attaché at Paris, France.

From this testimony, both oral and documentary, it appears that in April of 1935 all of the manufacturers in Italy of this type of merchandise, of whom there were about 20 to 25, formed an organization known as UCEC for the purpose of improving conditions in the export trade in such merchandise shipped from Italy to the United States. This was a private organization, sanctioned by the Italian Government. It had the power to fix and regulate minimum prices and to establish discounts controlling upon its members. It further appears that Milan, in the province of Lombardy, Italy, was the principal market for the sale of such merchandise; that the articles in question were made exclusively for the American market, no such or similar merchandise being sold or offered for sale for home consumption; and that there were no restrictions of any kind imposed upon the purchasers with respect to price, use, resale, disposition, or otherwise.

During the year 1939, the UCEC prescribed the allowance of certain discounts deductible from the minimum list prices established by it. A 1 per centum discount for cash was allowed upon all sales to all purchasers. In addition, a scale of discounts was fixed to apply to all purchasers regardless of whether they were wholesalers, retailers, or otherwise, and irrespective of from whom the purchase was made. The discounts were based upon the average per year of the total value of merchandise purchased by the respective buyers during the years 1937–1938 from all the members of UCEC. If the average per year value of purchases of a particular buyer equaled or exceeded $250,001, the buyer was entitled to receive a discount of 7 per centum on all purchases made during the year 1939. Buyers of lesser amounts

during the typical average years received lower discounts from the list prices. The scale of said discounts was as follows:

| If purchases during preceding 2-year period averaged per year | The trade discount was |
|---|---|
| Less than $50,000 | None |
| $50,001 to $100,000 | 2% |
| $100,001 to $150,000 | 3% |
| $150,001 to $200,000 | 4% |
| $200,001 to $250,000 | 5% |
| $250,001 or more | 7% |

If at any time during the course of the year 1939, a buyer's purchases exceeded the maximum value of the category into which he was placed, he was automatically entitled to the discount allowable for the next bracket. That is to say, a buyer who, during the years 1937–1938, averaged $140,000 per year, and was thus entitled to a 3 per centum discount in addition to 1 per centum for cash, would be entitled to 4 per centum plus 1 per centum as soon as his purchases during the year 1939 equaled or exceeded $150,001. A buyer who had not purchased this merchandise in 1937–1938 received no discount in 1939 until his purchases in that year reached $50,001. Then he fell within the sliding scale of discounts hereinabove set forth.

The difference between the discount, other than the cash discount, allowed to the purchaser and 7 per centum, if any, was paid by the manufacturers to UCEC for its general administrative expenses, so that the seller at no time received more than 93 per centum of the base unit prices prescribed by UCEC. In practical effect, the payments made by the manufacturer to his association operated as follows:

| If purchases during preceding biyearly period averaged per year | The manufacturer would deduct from sale price | The manufacturer would pay to UCEC |
|---|---|---|
| Less than $50,000 | Nothing | 7% |
| $50,001 to $100,000 | 2% | 5% |
| $100,001 to $150,000 | 3% | 4% |
| $150,001 to $200,000 | 4% | 3% |
| $200,001 to $250,000 | 5% | 2% |
| $250,001 or more | 7% | Nothing |

Almost all of the merchandise manufactured by the members of UCEC was purchased by about seven buyers in the United States. They accounted for approximately 95 per centum of all the business conducted with Italian manufacturers of cotton and rayon bedspreads and other similar articles. The schedule of sales of these purchasers is annexed to the affidavit of Felice Gusberti, the general manager of UCEC, which was received in evidence as plaintiff's exhibit 2. It reads as follows:

SCHEDULE OF SALES

| Purchaser | Year | Total Number of Sales | Approximate Total Value of Sales | Discount |
|---|---|---|---|---|
| Ramallah Trading Co_____ | 1937 | 127 | $368, 000 | |
| | 1938 | 90 | 422, 100 | |
| | 1939 | 123 | 397, 300 | 7% |
| Oceanic Trading Co_____ | 1937 | 151 | $440, 700 | |
| | 1938 | 129 | 296, 300 | |
| | 1939 | 68 | 261, 900 | 7% |
| Trinacria Importing Co_____ | 1937 | 200 | $346, 500 | |
| | 1938 | 112 | 195, 000 | |
| | 1939 | 184 | 308, 600 | 7% |
| Palestine Trading Co_____ | 1937 | 97 | $190, 100 | |
| | 1938 | 88 | 223, 600 | |
| | 1939 | 103 | 200, 300 | 4% |
| | 1939 | 3 | 4, 400 | 5% |
| Dardebwan Trading Co_____ | 1937 | 191 | $312, 000 | |
| | 1938 | 98 | 173, 000 | |
| | 1939 | 63 | 164, 000 | 5% |
| | 1939 | 71 | 137, 600 | 7% |
| Galatex Co_____ | 1937 | 48 | $39, 400 | |
| | 1938 | 83 | 65, 900 | |
| | 1939 | 68 | 33, 600 | 2% |
| D'Alessandro Bros_____ | 1937 | ------ | ---------- | |
| | 1938 | ------ | ---------- | |
| | 1939 | 8 | $4, 100 | None |

With respect to wholesale quantities, the evidence reveals that 1 bale, consisting of 100 to 150 bedspreads, or 600 scarves, or 216 table covers, was a wholesale quantity. There is also testimony that sales of $500 and upwards were considered to be wholesale sales. In fact, all the sales by the members of UCEC were wholesale sales. However, the trade discounts allowed were granted not upon the basis of the quantity of goods purchased at any one time, but upon the average of the total value of goods purchased during the years 1937–1938, or the total value actually ordered during 1939.

Section 402 (d) of the Tariff Act of 1930 provides as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Export value is thus declared to be the price at which such or similar merchandise is freely offered for sale to *all* purchasers in the principal

markets of the country of exportation. It is not the price at which the merchandise was freely offered to some of the purchasers thereof, nor even to the great majority of the purchasers. It is rather the price at which any purchaser might buy in the usual wholesale quantities and in the ordinary course of trade.

In the case of *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308, the court was concerned with the question of the propriety of allowing a so-called "loyalty" discount of 5 per centum, claimed by the importer but disallowed by the appraiser, in ascertaining the foreign value of certain artificial silk yarn. The provision of section 402 (c) of the Tariff Act of 1930, which defines foreign value, contains the same language as does section 402 (d), *supra*, in respect to the freely offered price to all purchasers of the usual wholesale quantities. It there appeared that the loyalty discount was granted to all purchasers from a syndicate which had been formed to make inland sales of the goods. It was provided, however, that the discount would be cancelled if the purchaser bought from any nonmember of the syndicate. It was established that the discount had, in fact, never been cancelled, and apparently was allowed to about 99 per centum of the customers. The court, nevertheless, held that the discount was not a deductible item, stating (p. 38):

The first inquiry is: What was the price at the time of exportation, at which the imported merchandise was freely offered for sale to *all* purchasers in the principal markets of the country? The expression "all purchasers" does not mean the members of some association only, or 99 per centum of the purchasers of such goods, or those who would not thereafter buy such goods from someone else, but it does mean all of those who cared to buy such goods in such markets. This condition is not complied with by showing that the allowance of the "loyalty" discount was not, in fact, cancelled at any time. The language of the statute is "freely *offered* for sale." (Italics ours.) If the offer has coupled with it the restriction that 5 per centum of the purchase price may be cancelled at the discretion of the seller, then the goods are not *freely offered* for sale at the price, less the loyalty discount, to *all* purchasers. [Italics quoted.]

The record in the instant case is replete with evidence that the claimed 7 per centum discount was not allowed to *all* purchasers. Those selected few who during the years 1937–1938 purchased an average of $250,001 per year, and those only, obtained the allowance. The firm of D'Alessandro Bros., who, all the witnesses testified, was one of the seven or eight principal American dealers in this type of merchandise, made no purchases thereof in Italy in 1937 and 1938, purchased only $4,100 worth in 1939, and received no discount. Yet their purchases averaged $500 per order and were clearly within the amount which plaintiff's witness, Bateh, testified would be, as to value, a wholesale sale. Similarly, other major buyers of this mer-

chandise received less than the 7 per centum discount. Palestine Trading Co. received 4 per centum during part of 1939 and 5 per centum for the remainder of the year. Dardebwan Trading Co. at first received a 5 per centum discount, but later obtained the maximum discount. Others who were not named by the witnesses but who constituted approximately 5 per centum of the trade in that type of merchandise received no discounts. The failure of the manufacturers to allow the 7 per centum discount to these purchasers establishes that the discount was not freely offered to all purchasers.

Counsel for plaintiff contends that the allowance of the full discount to all buyers may be spelled out from the fact that where the discount granted was less than 7 per centum, the difference between the amount actually allowed and 7 per centum was turned over to the UCEC. Counsel's assertion that the UCEC was established "chiefly for the benefit of the smaller buyers because the larger buyers (over $250,000) received 7% discount without contribution to that organization" and that the smaller buyers "were the ones chiefly benefiting by the operations of the association" are purely gratuitous statements not supported by the record. An inference more consistent with the proven facts is that the discount was granted to quantity purchasers only, and was designed to stimulate business.

In any event, it is immaterial that the manufacturers never received more than 93 per centum of the list price. The statute establishes as the test, not the price the manufacturer actually received or was willing to receive, but the price at which such or similar merchandise was freely offered for sale to all purchasers. As stated by our appellate court in *United States* v. *Zellerbach Paper Co.* (*Hoyt, Shepston & Sciaroni*), 28 C. C. P. A. (Customs) 303, C. A. D. 159, at page 308:

* * * The mandate of the statute does not provide that there shall be one price received by the seller, but that the price accepted as foreign value shall be that at which such or similar merchandise is freely offered to all purchasers.

All purchasers did not receive the 7 per centum discount. Nor were all offers for sale freely made subject to such discount. Some purchasers received 4 or 5 per centum discounts; others paid the list prices. The prices at which all purchasers could obtain this merchandise in usual wholesale quantities in the ordinary course of trade were the list prices less the 1 per centum cash discount.

Counsel for plaintiff urges alternatively "that the major portion or greatest number of sales of the merchandise in question in a wholesale quantity were at list prices, less 7% trade discount, and that as such sales establish the usual wholesale quantity, the trade discount allowed thereon is not part of dutiable market value."

That the usual wholesale quantities are determined by considering the major portion or greatest number of sales or offers for sale in

wholesale quantities is by now well-settled law. *G. W. Pleissner* v. *United States*, 16 Ct. Cust. Appls. 507, T. D. 43237; *United States* v. *M. Minkus*, 21 C. C. P. A. (Customs) 382, T. D. 46912; *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093. It does not follow, however, that the same criterion shall be applied in determining the freely offered price to all customers. A discount which has not been allowed to *all* purchasers buying in the usual wholesale quantities and in the ordinary course of trade may not be considered in arriving at either foreign or export value of imported merchandise even where it is shown that the majority of those purchasing in the usual wholesale quantities and in the ordinary course of trade received such discount. *United States* v. *A. W. Faber, Inc.*, 21 C. C. P. A. (Customs) 290, T. D. 46817; *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129. Once the usual wholesale quantities have been ascertained from a consideration of the greatest number of sales or offers for sale in wholesale quantities, then the pertinent inquiry is the price at which the merchandise is freely offered to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade.

There is evidence in the instant record that one bale constituted a wholesale quantity; that sales of $500 and upwards were sales at wholesale; that the discounts were paid regardless of the quantity of any individual purchase; that all sales were in wholesale quantities. The total sales to all buyers in the year 1939, at the respective discounts, were as follows:

| Total number of sales | Approximate total value of sales | Trade discount allowed |
|---|---|---|
| 446 | $1, 105, 400 | 7% |
| 66 | 168, 400 | 5% |
| 103 | 200, 300 | 4% |
| 68 | 33, 600 | 2% |
| 8 | 4, 100 | None |

Accepting the figure 446 as the one at which the greatest number of sales at any given discount was made during the entire year of 1939, it appears that the average of each such sale is somewhat under $2,500. Certainly, therefore, even if it were possible to define usual wholesale quantity in terms of value, rather than in terms of units purchased, it could not reasonably be held that the usual wholesale quantity in which the instant merchandise was purchased was $250,000 or more or less, as the case may be. However, the term "usual wholesale quantities," as it appears in section 402 (d) of the Tariff Act of 1930, has on numerous occasions been held to refer to the unit of quantity of merchandise involved in individual sales, and therefore

the total money value of such sales is not a material factor in determining usual wholesale quantities.

Furthermore, since the price at which the instant merchandise was sold did not vary according to the quantities purchased, there is no question here of usual wholesale quantity. *Jenkins Brothers* v. *United States, supra.*

It is the opinion of the court that the trade discount of 7 per centum was not freely offered to all purchasers in the usual wholesale quantities and in the ordinary course of trade, and that the appraiser properly disallowed it.

I therefore find as follows:

1. That the merchandise, the subject of these appeals for reappraisement, is cotton and rayon bedspreads, table cloths, and scarves, exported from Italy.

2. That the merchandise was entered at the *per se* unit values as invoiced, less 1 per centum cash discount, less a discount of 7 per centum, less the item of freight as invoiced, packing included as invoiced.

3. That the merchandise was appraised at the *per se* unit values, as invoiced, less 1 per centum cash discount, packing and freight included.

4. That the principal market in Italy for the involved merchandise was the city of Milan, in the province of Lombardy.

5. That the price at which the instant merchandise was freely offered for sale to all purchasers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, did not vary with the quantity purchased.

6. That the merchandise was freely offered for sale to all purchasers in usual wholesale quantities, in the ordinary course of trade for export to the United States on or about the date of exportation, at the *per se* list prices, less 1 per centum cash discount, packing included.

7. That no trade discounts were allowed to all purchasers in the usual wholesale quantities and in the ordinary course of trade.

8. That the merchandise was not freely offered for sale nor sold for home consumption in Italy.

Therefore, I arrive at the following conclusions of law:

1. That the proper basis of value for the merchandise in question is the export value, and that there is no foreign value for said merchandise.

2. That the item of freight as invoiced is not a dutiable item.

3. That the export value, as defined in section 402 (d) of the Tariff Act of 1930, was the *per se* unit prices, less a 1 per centum cash discount, packing included, less freight as invoiced.

Judgment will be entered accordingly.